# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

DONALD NORTON YORK,

     *Petitioner*,

    CRIMINAL CASE NO. 04-CR-20038
    CIVIL CASE NO. 11-CV-13282

*v.*

UNITED STATES OF AMERICA,

    DISTRICT JUDGE THOMAS LUDINGTON
    MAGISTRATE JUDGE CHARLES BINDER

     *Respondent*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE
(Doc. 583)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **DENIED**.

## II.    REPORT

### A.    Introduction

Pending, pursuant to an order of reference from United States District Judge Thomas L. Ludington, is the above-entitled motion to vacate Petitioner Donald York's federal custodial sentence pursuant to 28 U.S.C. § 2255. Respondent submitted a response (Doc. 589) and Petitioner York (hereafter "York") filed a reply. (Doc. 590.) In addition, York filed an "addendum" to his motion wherein he refers the Court to the recent case of *United States v. Mendez-Santana*, 645 F.3d 822 (6th Cir. 2011). (Doc. 587.) Therefore, I conclude that, pursuant to E.D. Mich. LR 7.1(f)(1), this motion is ready for Report and Recommendation without oral argument.

**B.      Background**

York was charged in twelve counts of a twenty-seven count Sixth Superseding Indictment with: conspiracy to distribute 500 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. § 846 (Count 1); distribution of fifty grams or more of a mixture containing methamphetamine on February 2, 2004, in violation of 21 U.S.C. § 841(a)(1) (Count 2); distribution of less than 50 grams of a mixture containing methamphetamine on February 2, 2004, in violation of 21 U.S.C. § 841(a)(1) (Count 3); possession of a firearm while being an unlawful user of methamphetamine on July 29, 2004, in violation of 18 U.S.C. § 922(g)(3) (Count 12); possession of a firearm while being an unlawful user of methamphetamine on August 10, 2004, in violation of 18 U.S.C. § 922(g)(3) (Count 13); felon in possession of a firearm on February 25, 2004, in violation of 18 U.S.C. § 922(d)(1) (Count 16); possession of a firearm with an altered, removed, or obliterated manufacturer's serial number on February 25, 2004, in violation of 18 U.S.C. § 922(k) (Count 17); conspiracy to cause the intentional killing of Brian "Lefty" Langdon on March 4, 2002, while conspiring to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 846 (Count 21); killing of Brian "Lefty" Langdon while conspiring to possess with intent to distribute 500 grams or more of a mixture containing methamphetamine on March 4, 2002, in violation of 21 U.S.C. § 848(e) (Count 22); possession of a firearm during a drug trafficking crime on March 4, 2002, in violation of 18 U.S.C. § 924(c) and (j) (Count 23); killing of Brian "Lefty" Langdon with intent to prevent him from providing information to law enforcement officials on March 4, 2002, in violation of 18 U.S.C. § 1512(a)(1)(C) and (2)) (Count 25); and forfeiture under 21 U.S.C. § 853 (Count 26). (Doc. 217.)

On February 16, 2006, York signed an acknowledgment which stated that the possible penalty for Count 1 was at least ten years and up to life imprisonment; 20 years for Counts 2 and 3; 10 years for Counts 12, 13, and 16; 5 years for Count 17; at least 20 years and up to life imprisonment for Counts 21 and 22; at least 10 years and up to life imprisonment for Count 23; 10 years for Count 24; and up to life imprisonment for Count 25. (Doc. 225.)

After several motions *in limine* were decided and extensions were granted, on October 3, 2007, York pleaded guilty to a lesser included offense of Count 1 of the Sixth Superseding Indictment and the remaining charges were dismissed as provided in the Rule 11 plea agreement. (Doc. 438.) The agreement, as read into the record, indicated that there were no sentencing guideline scoring disputes and that the applicable guideline range was 188 to 235 months. (*Id.* at 3.) The agreement also stated that the "sentence of imprisonment may not exceed the guideline range as determined by the court" and that the "Court **must** impose a sentence of imprisonment on Count 1 of at least 5 years." (*Id.* at 5 (emphasis in original).) At the plea hearing, York was placed under oath and the court informed York that the offense to which he was pleading guilty carried a minimum term of 5 years and up to 40 years' imprisonment. (Doc. 525 at 5.)[1] When York was asked whether he had been satisfied with the advice and assistance given to him by his counsel, York responded, "I have, your Honor." (*Id.* at 6.) After the Assistant United States Attorney ("AUSA") read the salient portions of the Rule 11 agreement into the record, including the non-binding guideline range of 188 to 235 months, the court asked York whether he "heard anything in his explanation that's in any way inconsistent with your understanding of the terms of the agreement?" to which York responded, "It is consistent." (Doc. 525 at 11.) The district court was "further satisfied that [York] has freely and voluntarily tendered the plea and he has done so

---

[1]The plea transcript is also electronically filed at Document 561.

in a knowing and intelligent way. We accept the plea, the Rule 11 will be taken under advisement to be considered together with the presentence report . . . ." (Doc. 525 at 14-15.)

On January 11, 2008, York, through his counsel, filed a sentencing memorandum wherein he stated that he requested application of the safety valve to avoid the mandatory five-year minimum but that if found ineligible for such relief, York would submit that the five-year mandatory minimum was the appropriate sentence. (Doc. 462 at 2-3.) In support of the request, York noted that the sentencing guidelines were advisory and no longer mandatory. (*Id*. at 3.) York referenced tape-recorded sales he conducted and accepted responsibility for being a low-level drug dealer to support his personal use habit. (*Id*. at 7-8.)

Four days later, on January 15, 2008, York filed a *pro se* motion to withdraw his plea. (Doc. 463.) York claimed that his counsel had been ineffective for, among other things, giving him "incorrect information regarding the term of the Plea Agreement, that he would serve only 'five years in prison'" and that "his acceptance of the agreement [was made] on that belief." (Doc. 463 at 2.) On that same day, York asked to "withdraw" his attorney. (Doc. 464.) New counsel, Shawn Sutton, was appointed to represent York on April 11, 2008. (Doc. 493.)

A hearing on the motion to withdraw York's plea was held on September 26, 2008 (Doc. 560), and continued on October 17, 2008. (Doc. 562.) At the first hearing, York testified that on October 3, 2007, his attorney David Nickola (Nickola) told him that "the judge had talked to Mr. Hluchaniuk [the AUSA] and told him that he should come up with a plea that I would take[] – so, Mr. Nickola said that because of my age, because I have no criminal record, because of my wife's disability and needs to be cared for at home, the judge agreed to give me five years if I would say what he wanted me to say in this plea." (Doc. 560 at 9.) York testified that after having spoken with his wife and after lunch, Nickola told York that his "wife wanted me to take this plea,

4

that he was only thinking of her because she needed me so bad and that this was the best deal I was going to get. And there was a good possibility that Mr. Hluchaniuk would be able to get me on something else or – I don't know." (*Id.* at 10.) York further testified that Nickola "assured me that, you know, it was five years that I – that was agreed on. And that he would ask for a cops hearing, but he said in the federal court they don't give cops hearings. But he said: Believe me, this is what's going to happen." (*Id.* at 11-12.)[2]

Although York was given a copy of the plea agreement, he "read just briefly what it said and didn't – he more or less told me that the five years was what I was going to get." (*Id.* at 12.) York further testified that although he "asked him [Nickola] if I could read this over for a while, you know, so I could make a decision. He [Nickola] said no, I had to do it right then or I wasn't going to get this offer." (*Id.* at 12.) When asked whether he was aware of the guideline range of 188 to 235 months at the time he entered his plea, and whether the portion of the Rule 11 plea agreement was read into the record at the time of the plea, York responded in the affirmative. (*Id.* at 15.) York testified that he did not say anything at the plea hearing because he "was told this was already a set deal, I was only going to get five years. And at one point his honor mentioned that he had to give me at least 60 months, which is five years. So I took that as an indication that that's what I was going to get, five years." (*Id.* at 15.)

York also testified that he "asked him [Nickola] why I had to have a presentence investigation if there was already an agreement. Then he said the judge didn't say I was going to

---

[2]The court presumes that by "cops" hearing York is referring to a *Cobbs* hearing pursuant to the Michigan Supreme Court case of *People v. Cobbs*, 443 Mich. 276, 505 N.W. 2d 208 (1993). In *Cobbs*, the court held that, at the request of a party, a judge may state on the record the length of sentence that appears to be appropriate based on the information available. A defendant who pleads guilty in reliance on a Michigan state court judge's preliminary evaluation has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation. *Id.* at 283. At another point during the hearing, York clarified that he was referring to *Cobbs*. (Doc. 560 at 34.)

get five years, that he was going to argue five years. But if he wouldn't give us what we wanted, he would pull my plea under the Rule 11 and we'd go to trial." (*Id.* at 17, 20.)

York testified that when he called Nickola and told him he wanted to withdraw his plea, Nickola told him he could not withdraw the plea, "[b]ut then he said if they gave me over 20 years, he would appeal it and I was just – it was like getting stabbed in the back." (*Id.* at 21.) York stated that the reason he waited to file the motion to withdraw was simply because he was "ignorant" and "had to file it myself, I made up my own motion, you know." (*Id.* at 22-23.) On cross-examination, when asked why he responded to the judge's question during the plea hearing by acknowledging that the Rule 11 was consistent with all he had heard after the Rule 11 agreement was read out loud, York responded, "[b]ecause Mr. Nickola told me that I had to answer the way the judge wanted me to to get the five years. So that's what I was trying to do, I was just trying to go along with whatever he said." (*Id.* at 33.) When asked whether he heard the 188 to 235 months mentioned during the reading of the plea agreement at the plea hearing, York responded, "Not really, it appears I blocked that out. I was told five years . . . ." (*Id.* at 33.)

When asked whether it was possible that he "just misunderstood what Mr. Nickola was telling you as you misunderstood what [the] court was telling you," York responded, "[i]t could be." (*Id.* at 33; *accord id.* at 61 ("Possibly I didn't understand him. I must have misunderstood him.").) York testified that in May 2007, he was offered a plea agreement of 25 years, and that Nickola did not give him any advice other than "he did tell me that the judge would be very mad at me if I don't come – he wanted me to come up with some kind of plea." (*Id.* at 38-39.) York acknowledged that his former counsel, James Piazza, filed a motion to withdraw the guilty plea on his behalf, alleging that York "only wanted to do two more years so [he] could get out and take care of [his] invalid wife" and that he believed he could get out within two years. (*Id.* at 42-44.)

6

York confirmed that, after Shawn Sutton was appointed to represent him, another brief (or supplemental memorandum) in support of his motion to withdraw his plea was filed which alleged that "at the presentence interview, [he was] told that [he was] still only going to get five years in prison and that agreement would be honored." (*Id.* at 45.) York maintained that he was told that there was no five-year sentence agreement after the presentence interview but before the presentence report was issued. (*Id.* at 48.)

York's wife, Janet York, testified that on October 3, 2007, Nickola told her that under the plea agreement entered into that day, York would receive a sentence of five years. (*Id.* at 67.) She also testified that she did not know about a guideline range of 188 to 235 months. (*Id.* at 67.) Mrs. York further testified that she wanted her husband home to help take care of her. (*Id.* at 68.)

Nickola testified that the original plea offer given to York in May 2007 was for a 300-month sentencing cap in exchange for pleas on Count 1, 22, and 23 (conspiracy and drug trafficking). (*Id.* at 73.) Nickola stated that he discussed the sentencing guidelines and that the offer would place a cap of 300 months on the potential sentence. (*Id.* at 74-75.)

Nickola testified that on October 3, 2007, the plea offer was for sentencing within the guideline range of 188 to 235 months, dismissal of all the drug trafficking, weapons, and homicide counts in exchange for a plea to Count 1 of the Sixth Superseding Indictment. (*Id.* at 75-76.) Nickola noted that a "very important aspect of resolution to this matter" was the dismissal of the homicide charge because it "would not have been resolved had Mr. York, in my opinion, been required to plead guilty to the murder of Brian Langdon, or associated with that." (*Id.* at 75.) Nickola further noted that the AUSA had agreed not to object to any defense argument for a sentence below the guidelines. (*Id.* at 76-77.)

7

Nickola stated that he told York, "when you sign this [Rule 11 agreement], there's no going back." (*Id.* at 80.) Nickola also testified that he went over the presentence report with York, formulated specific objections to it that were filed with the court, and that on December 17, he asked York to go over the sentencing memorandum he had prepared. (*Id.* at 85-86.) York sent a letter to Nickola with corrections he wanted made to the sentencing memorandum. (*Id.* at 88.) After a third draft of the sentencing memorandum was prepared, Nickola visited York in jail and made notations on that third draft. (*Id.* at 89-91.) In none of the communications did York indicate that he was innocent or that he was surprised by the 188 to 235 month sentencing guideline range. (*Id.* at 90.)

On January 2, 2008, while reviewing the third draft, York indicated to Nickola that he wanted to move to withdraw his plea. (*Id.* at 93.) Nickola told York that AUSA Hluchaniuk had been appointed a United States Magistrate Judge and was no longer on the case. When York asked who had replaced Hluchaniuk, Nickola told him Barbara Tanase replaced Hluchaniuk, and York indicated "he wanted to withdraw his plea because he thought we could beat Barbara Tanase at trial." (*Id.* at 93.) Nickola testifed that his response to York was, "it wouldn't have mattered, you know, I could beat Mike Hluchaniuk as well as I could beat Ms. Tanase. We had that opportunity. It's not a basis to set aside the plea." (*Id.* at 93.) Nickola stated that although York told him that "a motion has to be filed to withdraw your plea before sentencing[,]" Nickola responded, "I'm not going to file a motion based upon changes of prosecutor." (*Id.*) Nickola further testified that he "d[id]n't believe [York] ever misunderstood anything other than the fact that he wanted to change his plea because he wanted another shot with a different prosecutor." (*Id.* at 95.)

As to Mrs. York, Nickola testified that he told her that "there was a guideline range and we were hoping with Don's background that we might be able to get the judge to come below the

guidelines. We'd at least have the right to ask the judge to do that." (*Id.* at 81.) Nickola also testified that he "never said [York's] only going to get five years, I never told Janet that. I think she knows that too." (*Id.* at 99.)

Based on attorney-client privilege issues raised in the above hearing regarding York's motion to withdraw his plea, the Court directed briefing on the subject and on September 18, 2008, the court issued an Order determining the scope of the waiver of attorney-client privilege. (Doc. 514.) The court determined that the privilege would be waived only as to "specific communications relevant to the plea agreement" and that the court would "determine whether communications between Defendant and his attorney in addition to the conversations on October 3, 2007, are impliedly waived by Defendant's motion to withdraw his plea" on a "question by question basis during the hearing." (*Id.* at 4-5.)

During the continued hearing on York's motion to withdraw his plea held on October 17, 2008, Nickola testified that he spoke with York on October 3, 2007, both in the morning and in the afternoon before the plea hearing. (Doc. 562 at 3.) Nickola stated that York "decided he wanted to take the plea agreement" and further stated that "[i]f he had told me [in] any way, shape or form that he did not want to do it or needed more time, he would have gotten that response [that Nickola would try to get him more time]. There was no pressure on him, this was his decision." (*Id.* at 14.) Nickola testified that York "wanted me to put the word, quote unquote, safety valve in the sentencing memorandum when we had met and spoke . . . Don [York] wanted the safety valve in there. He brought that language to the table." (*Id.* at 15.) The sentencing memorandum was explained to be akin to "our own presentence report . . . that talked about all the good in his life and let the judge see all the factors we thought were positive." (*Id.* at 18.) Nickola testified that he told York he "had to make a voluntary statement[,] [t]hat's a requirement" to being eligible for the

safety valve so Nickola sent a letter seeking an appointment with the AUSA's office for an interview. (*Id.* at 16.)

As to potential sentencing, Nickola testified that he told York that "courts generally stay in the guidelines. But there are factors in this case that I felt the judge would take into consideration. There's a possibility that he'll go below the guidelines, and that's what I believed and I believe that today." (*Id.* at 20.)  When asked whether he believed the court would sentence below the guidelines, Nickola responded, "No, I believe we had factors that were serious in this case, the factors were that he had not had any criminal record in his lifetime, that he served his country, that the facts in this case show there were obviously other people who had a much more significant role than him." (*Id.*) "He was using alcohol and drugs at the time. And he had kind of got caught up in a downward spiral . . . it's mitigating not only from a judge's perspective but from anyone's perspective who looked at it." (*Id.* at 20-21.) Nickola stated he "made no recommendation on behalf of what the judge would do . . . I told him that there were factors the judge can take into consideration, I thought strong factors too." (*Id.* at 22.)

Nickola also testified that when he spoke to York on November 5, 2007, visited York on December 17, 2007, and when York wrote a letter to him dated December 24, 2007, York did not indicate that he wanted to withdraw his plea. (*Id.* at 27-28, 30.) The first Nickola heard of York's desire to withdraw his plea was during a visit on January 2, 2008. (*Id.* at 29.) After Nickola told York that AUSA Hluchaniuk was no longer the prosecutor, York indicated that "he wanted to withdraw his plea because he thought he could win the trial." (*Id.* at 29.)

As evidenced in an order filed on October 23, 2008 (Doc. 519), after evaluating the factors set forth in Rules 11(d)(2)(b) and 32(e) of the Federal Rules of Criminal Procedure and as explained in *United States v. Dixon*, 479 F.3d 431 (6th Cir. 2007), the court denied York's motion

to withdraw his plea. (Doc. 562 at 42-54.) The court noted that the only factor weighing in favor of York's motion was that York had "little experience with the criminal justice system." (*Id.* at 43.) The court further indicated, however, that at the time of his plea, York knew the gravity of the offenses charged. The court noted that York's co-defendants had been sentenced to 360 months, 120 months, 300 months, and 293 months' imprisonment, "including the accusations that a witness had been killed either at [York's] direction or by him . . . ." (*Id.* at 44.)

The court found that the remaining factors weighed against granting the motion. (*Id.* at 45.) The court found that there was nothing in the Rule 11 agreement that would have misguided York, nothing in his responses at the plea hearing that would have suggested that he had any legitimate misunderstanding of the terms of the agreement, and no pressure or indicia that "cool, intelligent consideration could be given to the plea offer that had been extended to Mr. York." (*Id.* at 46.) In addition, the court noted that almost three months had passed from the time York learned that he was not going to be given the statutory minimum five-year sentence and the date he first informed the court that he wanted to withdraw his plea. (*Id.* at 47.) The court further opined that it was unlikely that York had misunderstood the circumstance before the date he stated he learned that the five-year minimum sentence would not be applied since he had actively participated in the drafting of the sentencing memorandum submitted by counsel. (*Id.* at 49.) The court also noted that although York consistently maintained his innocence as to the death of Brian Langdon, he had acknowledged his participation in the distribution of methamphetamine. (*Id.* at 48-49.) Finally, the court found that since all the co-defendants had already proceeded to trial and sentencing, since the underlying events dated back to 1995, and since many witnesses had disbursed, there would be prejudice to the government if the motion to withdraw the plea were granted. (*Id.* at 49.)

York appeared for sentencing on May 27, 2009. At the sentencing hearing, the court noted that York "was aware of the fact prior to the time his testimony was offered that more likely than not he would lose the two-level acceptance of responsibility if he did not prevail on the motion. Indeed, we covered that as a risk in court." (Doc. 557 at 11.) The court further noted that this "would have the effect of moving the guideline, recommended guideline, range from 188 to 235, which was the original Rule 11 agreement, to 235 months to 293 months." (*Id.* at 11.) The court found that York was not entitled to the two-level acceptance of responsibility reduction. (*Id.* at 11.) Judgment entered on June 2, 2009, committing York to the Bureau of Prisons for 245 months. (Doc. 537.)

On December 22, 2010, the Sixth Circuit affirmed the district court's denial of York's motion to withdraw his guilty plea in an unpublished opinion, holding that the district court engaged in a comprehensive balancing of the relevant factors. (Doc. 580.)

### C.    Parties' Arguments

York raises ten grounds for relief in his § 2255 motion: (1) "Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea"; (2) "Conviction obtained by the use of coerced confession"; (3) "Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure"; (4) "Conviction obtained by use of evidence obtained pursuant to an unlawful arrest"; (5) "Conviction obtained by a violation of the privilege against self-incrimination"; (6) "Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant"; (7) "Conviction obtained by a violation of the protection against double jeopardy"; (8) "Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled"; (9) "Denial of effective

assistance of counsel"; and (10) "Denial of right of appeal." (Doc. 583 at 4.) The only issue raised in York's direct appeal was the denial of his motion to withdraw his guilty plea, which is ground one in the instant motion. Under York's explanation of ground one, he explains that his claim that the guilty plea was not knowing or voluntary is based on his attorney's "false" advice that he would "likely receive a 60 month sentence even though the guideline range was 188 to 235 months and Defendant was not a cooperating witness." (Doc. 583 at 5.)

The government responds that York cannot show that counsel was ineffective because "[w]hen a defendant who was [sic] pled guilty to a charge states at the plea that there are no other promises that have induced the plea and later directly refutes it with claims of promises that were not disclosed on the record, he is estopped from relying on those alleged undisclosed promises." (Doc. 589 at 14 (citing *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993); *Warner v. United States*, 975 F.2d 1207, 1210 (6th Cir. 1992); and *Ramos v. Rogers*, 170 F.3d 560 (6th Cir. 1999).)  The government further argues that York's claims of promises of a five-year sentence are not credible because the plea colloquy and Rule 11 agreement cured any misunderstanding because they contained both the five-year mandatory minimum and the guideline range of 188 to 235 months. (Doc. 589 at 16.) Finally, the government contends that York's reliance on *United States v. Mendez-Santana* is misplaced[3] because the plea in the instant case had already been accepted, whereas in *Mendez-Santana,* the plea had not been accepted and thus could be withdrawn for any or no reason at all. (Doc. 589 at 17.)

York replies that "[w]hile it is true that the Defendant may have testified at the motion to withdraw guilty plea hearing that he was promised that he would receive no more than a five year sentence, it appears that he recalled some events and discussions with his attorney incorrectly."

---

[3]This case was cited in York's "addendum." (Doc. 587.)

(Doc. 590 at 1.) York asserts that "[t]he truth of the matter is that his attorney, Mr. Nicola [sic], convinced Mr. York that he had a good chance of getting a sentence of five years, but not that he would definitely receive such a sentence. This is the issue that he raised in this petition under section 2255." (Doc. 590 at 1-2.) York also requested an evidentiary hearing in his reply brief. (Doc. 590 at 2.)

### D. Evidentiary Hearing

Section 2255 states that, "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C.§ 2255(b). "We have observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). On the other hand, no hearing is required if the petition's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 7787, 782 (6th Cir. 1999) (citation omitted). In addition, "the words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

14

In the instant case, a hearing was held on York's motion to withdraw plea based on the same issue he raises in the petition, i.e., his attorney's erroneous advice that York would be sentenced to the statutory minimum of five years. York, his wife, and his attorney all testified and were cross-examined. The record on these issues is complete and a second hearing would be duplicative. Therefore, I suggest the matter may be resolved without another evidentiary hearing. *Todaro*, 982 F.3d at 1030 (no evidentiary hearing needed where district judge conducted a hearing immediately after Todaro moved to withdraw his guilty plea, the attorneys testified, and where, at the plea hearing, Todaro denied that any other promises were made); *Hays v. United States*, 221 F.3d 1334, 2000 WL 924603, at *1-2 (6th Cir. June 26, 2000) (affirming district court's denial of 2255 motion decided without an evidentiary hearing where district court found petitioner's claim that his guilty plea was involuntary to "not hold an ounce of credibility" where petitioner was erroneously advised that maximum penalty was forty years rather than thirty years); *Lukasik v. United States*, No. 03-20019, 2011 WL 1296852, at *6 (E.D. Mich. March 31, 2011) (concluding that no evidentiary was required and denying 2255 motion where the petitioner contended that his lawyer was ineffective because he did not raise the good faith defense to tax evasion charges because record of plea hearing established he knew that intent to violate the law was an element of the offense and where petitioner now claimed he was told the victim enhancements would not be used if he pleaded guilty because the plea hearing transcript revealed the petitioner stated that no one promised him anything outside the terms of the plea agreement).

**E.      Standards for a Motion Under 28 § 2255**

**1.      Governing Law**

In order to prevail on a motion brought under 42 U.S.C. § 2255, a movant must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious

error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A section 2255 motion is not a substitute for a direct appeal. When a petitioner raises a claim that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation or actual innocence. *Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994); *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1981). A post-conviction motion under section 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's

errors, the result would have been favorably different. *Id*. at 693. Failure to make the required

showing under either prong of the *Strickland* test defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is

that counsel's unprofessional errors so upset the adversarial balance between defense and

prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v.*

*Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights

the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to

ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court

clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that
> counsel's errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome
> determination, without attention to whether the result of the proceeding was
> fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

Ineffective assistance of counsel claims "may be brought in a collateral proceeding under

§ 2255 whether or not the petitioner could have raised the claim on direct appeal." *Massaro v.*

*United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

## 2. Conviction by Guilty Plea (Ground One)

York contends that his "plea of guilty [] was unlawfully induced or not made voluntarily

or with understanding of the nature of the charge and the consequences of the plea." (Doc. 583 at

4.) This was the sole issue raised on direct appeal. York explains that his claim is based on his

attorney's "false" advice that he would "likely receive a 60 month sentence even though the

guideline range was 188 to 235 months and Defendant was not a cooperating witness." (*Id*. at 5.)

Therefore, it appears that ground one is brought under the rubric of ineffective assistance of counsel.

I first suggest that the testimonial evidence from the hearing on the motion to withdraw the plea does not show that York was promised a five-year sentence, nor does it show that his motive in seeking withdrawal of the plea was based on this unfulfilled promise. Even giving York's testimony full force, I suggest that it shows, at most, confusion. When asked whether it was possible that he "just misunderstood" what Mr. Nickola was telling him, like he misunderstood what the court was telling him, York responded, "It could be." (Doc. 560 at 33; 61 ("Possibly I didn't understand him. I must have misunderstood him.").) York's alleged confusion is undermined, I suggest, by the uncontradicted testimony that York was active in correcting or editing the sentencing memorandum. (*Id*. at 85-86, 88, 89-91.) In addition, when York mentioned, while reviewing the third draft on January 2, 2008, that he wanted to withdraw his plea, it was not because he had been confused about the potential sentencing consequences, it was because he believed he had a better shot at beating the newly appointed AUSA at trial. (*Id*. at 93.) I suggest that Nickola properly advised York that a "change of prosecutor" is "not a basis to set aside the plea." (*Id*. at 93.)

Even assuming York had testified that he was "promised" a five-year sentence and that it was this unfulfilled promise that motivated his motion to withdraw plea, I suggest the result would be the same. York relies on *United States v. Mendez-Santana*, 645 F.3d 822 (6th Cir. 2011). (Doc. 587.) In *Mendez-Santana*, the Sixth Circuit discussed the changes made to Rule 11 of the Federal Rules of Criminal Procedure that took effect in 2002:

> Prior to that date, Rule 11's predecessor, Federal Rule of Criminal Procedure 32(e), made no distinction between accepted and unaccepted guilty pleas . . . . Since the 2002 amendment of Rule 11, three of our sister circuits have recognized that district courts lack *any* discretion under Rule 11(d)(1) to deny motions to withdraw

18

unaccepted guilty pleas . . . . When Mendez-Santana sought to withdraw his unaccepted guilty plea, he possessed an absolute right to withdraw 'for any reason or no reason.'"

*Mendez-Santana*, 645 F.3d at 827. In the instant case, the court expressly stated that it accepted York's plea near the conclusion of the plea hearing. (Doc. 525 at 14-15.) Therefore, unlike the defendant in *Mendez-Santana*, York did not have an absolute right to withdraw his plea. Once a plea has been accepted but before the court imposes sentence, a plea may be withdrawn if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(2)(B). In making the fair and just determination, courts are to consider seven factors,[4] as the district court did in the instant case, and as the Sixth Circuit did in affirming the district court.

On direct appeal, the Sixth Circuit held that the district court properly applied the relevant factors in determining whether to allow the guilty plea to be withdrawn. (Doc. 580 at 12.) The court noted that York waited three months to file the motion to withdraw and that he did not dispute that fact but argued that he was trying to contact his lawyer during that time. The court further noted that even "accepting York's contention that he immediately tried to contact Nickola to file the motion and that Nickola denied his request in early November, York still fails to explain why he waited another two months before filing his *pro se* motion, which is almost exactly the amount of time that this court has already determined is 'extensive delay.'" (*Id*. 580 at 12-13.) The Sixth Circuit also noted that although York has maintained his innocence as to the murder charge, he admitted his guilt with respect to the methamphetamine charges. (*Id*. at 13.) In addition, the

---

[4]Those factors are: (1) the amount of time that elapsed between the plea and the motion to withdraw; (2) the presence (or absence) of a valid reason for the failure to move for a withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. *United States v. Khouri*, 169 Fed. App'x 459, 462 (2006) (citing *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *abrogated on other grounds by statute as stated in United States v. Caseslorente*, 220 F.3d 727 (6th Cir. 2000).

Sixth Circuit found that York never expressed any confusion over the terms of the plea agreement, that no statements had been made guaranteeing York a five-year sentence, and that prejudice would have resulted if the motion were granted because evidence had been destroyed by stipulation of the parties. (*Id.* at 14.) Finally, the Sixth Circuit noted that the only factor weighing in favor of York's request was that he had no prior experience with the court system. (*Id.*) However, since all of the other factors weighed against granting the motion, the Sixth Circuit held that the district court did not abuse its discretion in denying York's motion to withdraw his plea. (*Id.*)

Since the Sixth Circuit has held that the district court properly denied York's motion to withdraw his plea, I suggest that the lawfulness of the plea has been established. Even if York's contention that his plea was unlawfully induced and involuntary because his attorney promised him that he would be sentenced to five years imprisonment, his claim is untenable under long-established Sixth Circuit precedent. In *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), the movant alleged that his attorney had erroneously advised him that his federal sentence would run concurrent with a state sentence. The court noted the importance of plea bargaining to the administration of justice and stated that it "is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties." *Warner*, 975 F.2d at 1212. Noting also that a plea agreement is contractual in nature, the court opined that "[t]o allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contractual principles." *Warner*, 975 F.2d at 1212-13. Thus, the court held that where the district court "has scrupulously followed the required [Rule 11] procedure, 'the defendant is bound by his statements in response to the

court's inquiry.'" *Warner*, 975 F.2d at 1212 (citing *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976).)

At the plea hearing in the instant case, the Rule 11 agreement was read into the record. When the court asked York whether he "heard anything in his explanation that's in any way inconsistent with your understanding of the terms of the agreement," York responded, "It is consistent." (Doc. 525 at 11.) In addition, when asked whether anyone had promised him anything, apart from the provisions of the Rule 11 agreement, to try to convince him to plead guilty, York responded, "No, they haven't." (Doc. 525 at 11.) I suggest that York should be bound by these statements and that his motion to vacate sentence should be denied.

I further suggest that York is unable to show any prejudice since "a claim of ineffective assistance of counsel predicated on allegedly misleading information about the plea agreement can *never constitute* an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy" as the court conducted in the instant case. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (emphasis in original) (state prisoner claimed his plea was involuntary because his attorney promised him that the trial court would release him on probation after one year in prison) (citing *Baker v. United States*, 781 F.2d 85 (6th Cir. 1985); *Lukasik v. United States*, No. 03-20019, 2011 WL 1296852, at *7 (E.D. Mich. Mar. 31, 2011) (where movant claimed counsel was ineffective for not bringing good faith defense to his attention at the time he pleaded guilty, but movant knew that intent was an element, and where he claimed his attorney promised that the court would treat him more leniently if he pleaded guilty, § 2255 motion was denied because movant had stated on the record that no one made him any promises outside the terms of the plea agreement).

21

### 3.    Other Grounds

The remaining grounds in York's petition are stated in numerical order with no attendant factual basis or explanation. Under Rule 4(b), courts may dismiss § 2255 motions which contain vague and conclusory allegations made without substantiating allegations of specific facts. *United States v. Thomas,* 221 F.3d 430, 437 (3rd Cir. 2000); *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *Henry v. United States*, No. 3:05-cr-124, 2011 WL 4585258,  at *1 (E.D. Tenn. Sept. 30, 2011).  I therefore suggest that the remaining grounds be dismissed for failure to state a cognizable claim under § 2255.

As to the ineffective assistance of counsel claim, the only actions which York claims amounted to ineffective assistance of counsel regard ground one as addressed above. York is represented by counsel and counsel's reply brief addresses only the first ground regarding the voluntariness of York's plea. I therefore suggest that York's ineffective assistance of counsel claim has been narrowed, by York and his counsel, to the claims raised and addressed under ground one and does not require further analysis.

Even if the court were to attempt to elucidate the meaning of York's conclusory allegations, I suggest that none of them show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall, supra*.

### F.    Conclusion

I suggest that York has not alleged any claims that could support a finding that his trial counsel was ineffective, that he was prejudiced by any alleged ineffectiveness, or that the district court proceedings were fundamentally unfair or unreliable. Accordingly, I suggest that York's section 2255 motion be denied.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2).  See also 28 U.S.C. § 636(b)(1).  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.


                                          s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                          CHARLES E. BINDER
Dated: November 7, 2011                   United States Magistrate Judge


### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on all attorneys of record via the Court's CM/ECF system.

Date:  November 7, 2011           By     s/*Patricia T. Morris*
                                  Law Clerk to Magistrate Judge Binder